IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS EASLY,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

CV. 08-351-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Dennis Easly challenges the Commissioner's decision finding that his disability ceased and thereby denying further disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be reversed and remanded for further proceedings.

## BACKGROUND

Dennis Easly was born in 1954 (Tr. 63) and graduated from high school in 1972 (Tr. 82).

Page 1 - FINDINGS AND RECOMMENDATION

In 1986, a vehicular accident resulted in the near amputation of his right foot. (Tr. 446 - 456.) After undergoing surgery to reattach his foot (Tr. 446 - 456), Easly was able to return to work as a pile driver (Tr. 465, 459). He developed severe arthritis in his injured foot, however, and required surgery in April 2001. (Tr. 146 - 147, 165.)

Easly filed for disability benefits in August 2001, based on his right ankle injury, with an alleged disability onset date of March 2001. (Tr. 63.) Following his application, he underwent further surgery on his right foot in October 2001 (Tr. 134 -136) but continued to experience pain and difficulty walking (Tr. 225 - 226). He had additional surgery in January 2003 to remove hardware from his right foot. (Tr. 221 - 224.) In April 2003, he received a favorable disability determination for a period of disability commencing March 2001, his alleged onset date. (Tr. 20, 260.)

In August and September 2004, an investigator from the Commissioner's Cooperative Disability Investigation Unit visited Easly's home after a neighbor called to report that Easly was building a log house on his property by himself. (Tr. 356.) Easly told the investigator he was doing all the construction work himself. (Tr. 358.) During his time with the investigator, Easly did not walk with a cane and showed no difficulty with mobility except for an occasional slight limp. (Tr. 359.) In addition, the investigator observed Easly jump thirty-four inches from the deck of the log home to the ground and land on both feet without any apparent discomfort or difficulty. (Tr. 360.)

On December 9, 2004, the Commissioner determined that Easly was no longer disabled as of December 31, 2004, based on the investigative report from the Cooperative Disability Investigation Unit. (Tr. 242.) Easly requested reconsideration of that decision and listed sleep

apnea in addition to his right ankle injury as the basis for his continued disability. (Tr. 243.)

Following Easly's request for reconsideration, Sharon Eder, a state agency medical consultant, prepared a residual functional capacity assessment (RFC), which found that Easly could occasionally lift 50 pounds, frequently lift 25 pounds and stand, walk or sit for about 6 hours in an 8-hour day. (Tr. 389.) Eder also found that Easly could only occasionally operate foot controls with his right foot, and could only occasionally crouch or climb ladders, ropes or scaffolding. (Tr. 389 - 390.) Eder concluded that, although the objective data suggested that Easly had the residual functional capacity to perform only sedentary work, his level of activity in building the log home on his property was more consistent with medium-level work. (Tr. 395.)

In May 2005, following a hearing, a state agency disability hearing officer upheld the determination that Easly was no longer disabled. (Tr. 268.) Easly requested a hearing before an administrative law judge (ALJ). (Tr. 20.) The ALJ held a hearing on October 4, 2006 and took testimony from Easly (Tr. 496 - 502), who was not represented by an attorney, and from his wife, Lorin Easly (Tr. 502 - 503). On January 23, 2007, the ALJ, citing Rule 202.14 in the Medical Vocation Guidelines, ruled that Easly was not disabled because he could engage in a full range of light work. (Tr. 27.)

The Appeals Council denied review of the ALJ's decision. (Tr. 7 - 9.) This action made the ALJ's decision the Commissioner's final decision. Easly filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must examine all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court must defer to the Commissioner's decision. *Andrews*, 53 F.3d at 1039-40. A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citations omitted).

## DISCUSSION

Social Security disability benefits claimants have the burden of proving disability. *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir. 1983). Once the Commissioner finds that claimant is disabled, however, courts apply a presumption of continuing disability in the complainant's favor. *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985). The Commissioner bears the burden of producing evidence sufficient to rebut this presumption of continuing disability. *Id.* The Commissioner may find that a claimant's disability ceased only when substantial evidence demonstrates medical improvement in the claimant's impairment, resulting in the ability to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).

### I.      Procedure to Evaluate Disability Cessation

The Commissioner's regulations establish an eight-step sequential evaluation procedure to evaluate whether a claimant's disability has ceased. 20 C.F.R. § 404.1594. Under that procedure, the Commissioner must first determine whether the claimant is currently engaging in

substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, at step two, the Commissioner must determine if the claimant's impairments meet or equal the severity of a listed impairment. 20 C.F.R. § 404.1594(f)(2). At step three, if the impairment does not equal a listed impairment, the Commissioner inquires whether there has been a medical improvement to the claimant's impairment. 20 C.F.R. § 404.1594(f)(3). At step four, if there has been a medical improvement, the Commissioner asks whether it is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4). If the answer to step four is yes, the Commissioner goes to step six and inquires whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If the answer to step six is yes, the Commissioner then asks whether the claimant has the residual functional capacity to perform any of his past relevant work activity. 20 C.F.R. § 404.1594(f)(7). Finally, at step eight, if the claimant is unable to perform past relevant work, the Commissioner determines whether the claimant can perform other work. 20 C.F.R. § 404.1594(f)(8). If the claimant is able to perform other work, the Commissioner will find that the disability has ended. *Id.*

Here, the ALJ applied the eight-step evaluation process to determine if Easly's disability continued. (Tr. 20.) At step one, the ALJ found that Easly had not engaged in substantial gainful activity. (Tr. 21 - 22.) At step two, the ALJ found Easly did not have an impairment or combination of impairments that equaled a listed impairment because the evidence showed he was able to ambulate effectively. (Tr. 22.) At step three, the ALJ found that Easly had experienced medical improvement. *Id.* At step four, the ALJ concluded that the medical improvement was related to the claimant's ability to work. *Id.* As a result, the ALJ proceeded to step six, and found that Easly's right ankle impairment was severe as of December 31, 2004, but

that his sleep apnea was not severe. (Tr. 23.) At step seven, the ALJ concluded that Easly was unable to perform past relevant work as a pile driver. (Tr. 26.) Finally, at step eight, the ALJ determined that Easly could perform a significant number of jobs in the national economy, based on his age, education, work experience and residual functional capacity to perform the full range of light work. (Tr. 26 - 27.) In reaching that conclusion, the ALJ relied on the Medical Vocational Guidelines and determined Easly was not disabled, pursuant to Rule 202.14. (Tr. 27.)

The parties do not dispute the ALJ's analysis at steps one through seven. Instead, the dispute centers around the ALJ's RFC determination at step eight. Easly asserts that the ALJ erred by disregarding medical evidence concerning his non-exertional limitations and that, as a result, the ALJ improperly relied on the Medical Vocational Guidelines to conclude that he is not disabled.

## II.     Residual Functional Capacity Determination

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments. 20 C.F.R. § 404.1545(a), (e); SSR 96-8p, SSR LEXIS 5. The ALJ's RFC assessment "must always consider and address medical source opinions." SSR 96-8p, 1996 SSR LEXIS 5 at *20; *see also* 20 C.F.R. § 404.1527(f)(2)(ii) (unless the ALJ gives the treating physician controlling weight, the ALJ must explain the weight given to the opinion of a state agency medical consultant). An "ALJ is not free to disregard properly supported limitations." *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Rather, the ALJ must explain a decision to reject significant probative evidence. *Vincent v. Heckler*, 739 F.2d 1393,

1395 (9th Cir. 1984).

Here, the Commissioner concedes that the ALJ's RFC determination did not include the limitations identified by Eder, nor did the ALJ explain why he rejected Eder's opinion. Defendants, however, contend that the ALJ properly relied on the Medical Vocational Guidelines to conclude that Easly was no longer disabled because the limitations that Eder identified do not significantly impact Easly's ability to perform the full range of light work. As a result, defendants ask the court to find that the ALJ's error was harmless.

### A. Reliance on the Medical Vocational Guidelines

The Medical Vocational Guidelines, or grids, apply at the eighth step of the disability cessation analysis, 20 C.F.R. § 404.1594(f)(8), and "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Tommasetti v. Astrue*, 533 F.3d 1035, 1043 n.4 (9th Cir. 2008) (internal citations omitted). Thus, "the grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The ALJ, however, "must not apply the grids mechanically in borderline cases or where the claimants possess limitations that are not factored into the guidelines." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). In other words, the ALJ may rely on the grids only when they "accurately and completely describe the claimant's abilities and limitations." *Id.*

The grids categorize jobs based on exertional, or physical strength, limitations. 20 C.F.R. Pt. 404, Subpt. P, app. 2 § 200.00(e); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Non-exertional limitations, on the other hand, "are limitations that do not directly affect a claimant's strength." *Burkhart*, 856 F.2d at 1340. (citing 20 C.F.R. pt. 404, subpt. P,

App. 2 § 200.00(d),(e)).  Non-exertional limitations include "mental, sensory, postural, manipulative or environmental limitations . . . that affect a claimaint's ability to work."  *Id.* (internal citation omitted).

A claimant's allegation of a non-exertional limitation "does not automatically preclude application of the grids."  *Derosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988); *Polny v. Bowen*, 864 F.2d 661, 663 (9th Cir. 1988).  Rather, "[t]he ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations."  *Derosiers*, 846 F.2d at 577; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (holding the ALJ properly relied on the grids where substantial evidence supported the ALJ's conclusion that the claimant's depression was not sufficiently severe to limit the range of work claimant could do).  When a claimant's non-exertional limitations are "sufficiently severe" to significantly limit the range of work permitted by the claimant's exertional limitations, however, the ALJ must take the testimony of a vocational expert, *Jones*, 760 F.2d at 998, and identify specific jobs within the claimant's capabilities.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Here, the ALJ found the claimant could perform light work, which entails "a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  The full range of light work also includes unskilled, sedentary jobs.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006); *see also* 20 C. F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.")

Easly's non-exertional limitations include the ability to crouch or climb only occasionally

Page 8 - FINDINGS AND RECOMMENDATION

and to operate controls with his right foot only occasionally. Limitations in crouching or climbing, on their own, do not significantly limit the range of light work a claimant can perform. *See* SSR 83-14, 1983 SSR LEXIS 33 at *6 ("[T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch."); SSR 85-15, 1985 SR LEXIS 20 at *17 ("[w]here a person has some limitation in climbing and balancing, *and it is the only limitation*, it would not ordinarily have a significant impact on the broad world of work," although certain light occupations, such as construction painter, "may be ruled out") (emphasis added).[1]

Less clear, however, is the extent to which the limited ability to operate foot controls with the right foot erodes the range of available light work. Light work includes jobs performed in a seated position with some pushing and pulling of arm or leg controls, "which require greater exertion than in sedentary work." SSR 83-10, 1983 SSR LEXIS 30, at *14. Although "[r]elatively few unskilled light jobs are performed in a seated position," *id.*, a limitation in the use of foot controls could exclude at least some jobs in the light work category. In addition, sedentary jobs might also require the person "have the use of his or her legs and feet" to operate pedals or treadles. 1983 SSR LEXIS 33 at *6. Neither the record nor the regulations indicate, however, whether impairment in the use of just one foot would limit the range of light work available.

The ALJ's decision that Easly could perform the full range of light work is not supported

---

[1]"[Social Security Rulings] reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)).

Page 9 - FINDINGS AND RECOMMENDATION

by substantial evidence in the record. His limitations in the operation of foot controls and the ability to climb both eliminate at least some jobs within the range of light work. The record, however, does not tell us the extent to which these limitations, in combination, erode the available job base. When the ALJ "does not have a clear understanding of the effects of additional limitations on the job base," the services of a vocational expert are necessary." 1983 SSR LEXIS 33 at *17; *Polny*, 864 F.2d at 663-64 ("where . . . a claimant's nonextertional limitations are in themselves enough to limit his range of work, the grids do not apply . . . ."). Thus, the ALJ's decision here lacks the support of substantial evidence because the ALJ did not elicit the testimony of a vocational expert to determine the extent to which Easly's non-exertional limitations affected the range of light work he could perform.

    B.  **Harmless Error**

An ALJ's error is harmless if it is inconsequential to the ultimate disability determination. *See Tommasetti*, 533 F.3d at 1042. Thus, an error is harmless where it does not prejudice the claimant or when it is irrelevant to ALJ's disability conclusion. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). An error is not harmless, however, if it led to the ALJ's adverse disability finding. *See Widmark* 454 F.3d at 1069 n.4. Thus, an ALJ commits reversible error if the ALJ relies on the grids after failing to credit a medical opinion establishing non-exertional limitations that affect the claimant's ability to perform the full range of light work. *Id.*; *see also Tackett v. Apfel*, 180 F.3d 1094, 1104 (9th Cir. 1999) (ALJ's reliance on grids when claimant suffered a significant non-exertional limitation constituted reversible error); *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990) (ALJ's failure to explain how the claimant's non-exertional limitation affected his ability to work constituted reversible error).

Here, as in *Gonzales*, the ALJ did not provide reasons to reject the consulting physician's

Page 10 - FINDINGS AND RECOMMENDATION

opinion regarding Easly's non-exertional limitations, nor did the ALJ explain how Easly's non-exertional limitations affected his ability to work. While I recognize that the ALJ had strong evidence that discredited Easly's testimony, Doctor Eder was aware of that evidence but nonetheless found that Easly suffered from non-exertional limitations. The Social Security regulations and rulings, moreover, suggest that Easly's non-exertional limitations restrict the range of available jobs in the light range of work. As a result, the ALJ committed reversible error when he improperly relied on the grids to find Easly was not disabled.

In light of my conclusion that the ALJ's error was not harmless, this case should be remanded for further development of the record regarding the non-exertional limitations identified by Doctor Eder. *See Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001) (remanding for vocational expert testimony); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (remand is proper where additional administrative proceedings could remedy the defects in the decision). If the ALJ credits Eder's non-exertional limitations findings, the ALJ must take the testimony from a vocational expert to determine whether Easly is able to engage in any substantial gainful activity. *Polny*, 864 F.2d at 663-64. If the ALJ rejects Doctor Eder's finding of non-exertional limitations, the ALJ must state the reasons for doing so. 20 C.F.R. § 404.1527(f)(2)(ii). The ALJ may, in that case, rely on the Medical Vocational Guidelines only if the remaining evidence credited by the ALJ shows that Easly suffers only exertional limitations and/or non-exertional limitations that do not significantly limit the range of work he can perform. *Polny*, 864 F.2d at 663-64.

## CONCLUSION

For the reasons set forth above, this case should be remanded to the Social Security Administration for reconsideration of Easly's disability status after December 31, 2004.

Page 11 - FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 20, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

Dated this 6th day of January, 2009.

    /s/ Paul Papak
Paul Papak
United States Magistrate Judge